## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**SARAH FOREMAN,**

        **Plaintiff,**

    **v.**

**RIVER CITY MORTGAGE, LLC,**

        **Defendant.**

**Case No. 1:24-cv-54**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Sarah Foreman worked for Defendant River City Mortgage, LLC as a senior loan processor. During her tenure, she was diagnosed with Irritable Bowel Syndrome (IBS) and had to intermittently take leave under the Family and Medical Leave Act (FMLA) as a result. At one point, River City placed Foreman on a performance improvement plan, and then it later terminated her. Foreman says that was because River City didn't like that she was taking FMLA leave. River City says it was due to Foreman's poor job performance. Foreman sued, and River City now moves for summary judgment. For the reasons discussed below, the Court **GRANTS** River City's Motion for Summary Judgment (Doc. 15).

## BACKGROUND[1]

Foreman's relationship with River City began in March 2020 when it hired her as a Senior Mortgage Loan Processor. (Pl.'s Resp. to Proposed Undisputed Facts, Doc.

---

[1] Pursuant to the Court's Civil Standing Order (I)(F)(2)(a)–(c), River City filed a list of Proposed Undisputed Facts (Doc. 15-1) with its motions. Foreman admitted to many of those

20-1, #358). As a senior loan processor, Foreman ushered loans along to closing. Among other things, she reviewed documents for loan processing, cleared loan conditions, and communicated with various individuals to close a given loan. (*Id.* at #358–59). Ultimately, though, Foreman's tenure included a series of ups and downs.

The first bump came in January 2021. About a year into Foreman's time at River City, she had something of a scuffle with the company's President. (Doc. 13-10, #184–86). After the President re-assigned to himself a loan that Foreman had been handling (perhaps due to Foreman's inadequate performance or perhaps due to a mere misunderstanding), Foreman fired off an email to the President that he did not appreciate. (*See id.*). As a result, River City issued Foreman a notice, stating that she'd committed two infractions—one that was communication-based and another that was performance-based. (Doc. 13-9, #183). And it warned that if she did not "demonstrate improvement," she risked being terminated. (*Id.*).

But things seem to have smoothed out after that—a least for a little while. A couple of years later, in January 2023, River City moved Foreman to the Purchase Processor Team. (Foreman Depo., Doc. 13, #52, 58, 72). While part of that team, Foreman remained a senior loan processor, but she dealt primarily with purchase mortgage loans instead of refinances. (*Id.* at #57–58, 76). That placement didn't last all that long, though. In June 2023, Foreman hit another snag—River City removed Foreman from the Purchase Processor Team and also put her on a performance

---

proposed facts. (Doc. 20-1). Unless otherwise noted, the Court cites those documents only for admitted facts.

improvement plan (PIP). (Doc. 20-1, #358, 360). Why River City did so forms the heart of this dispute.

Before turning to the parties' competing accounts, though, some background on Foreman's medical condition is in order. Foreman suffers from IBS, which flares up from time to time. (*Id.* at #363). So in January 2023, after River City discontinued remote employee work, Foreman applied for leave under the FMLA due to her IBS.[2] (*Id.* at #363–64; Doc. 14-10, #248–49). She said she needed the ability to work from home in case any IBS-related flare-ups arose. (Doc. 14-10, #248). River City approved her FMLA application. (*See* Doc. 13-5, #177). And it agreed to allow Foreman to work a split schedule—that is, she could work from home the first part of the workday, but had to be in-office the latter part. (*Id.*).

That arrangement lasted about five months until River City put Foreman on the above-mentioned June 2023 PIP, which was to last thirty-days. (Doc. 13-6, #179). The PIP required Foreman to "[k]eep [her] work commitments by consistently showing up in office at 9 AM." (*Id.*). And it mandated that she both "[c]oncentrate on" completing tasks accurately and correspond with management for help in completing loan files. (*Id.*). The reason behind the PIP, however, is where the parties' narratives diverge. Take each in turn.

---

[2] The physician note supporting Foreman's FMLA leave application also noted that she suffers from Bipolar Disorder. (Doc. 13-3, #153). And while Foreman's initial Complaint referenced Bipolar Disorder as a basis for her claims, (Doc. 1, #2), her Amended Complaint makes no mention of it. Nor does her opposition brief to River City's motion. That means Foreman has forfeited any arguments based on her Bipolar Disorder. *See Cockrun v. Berrien Cnty.*, 101 F.4th 416, 419 (6th Cir. 2024) ("[A]n issue is deemed forfeited if it is merely mentioned and not developed." (cleaned up)).

3

Start with River City's version of events. It says the PIP was meant to ameliorate the performance-related deficiencies Foreman had been exhibiting in her work. For example, Foreman had apparently been cutting and pasting lengthy emails into the company's document management system, which hampered other team members' ability to quickly read and assess a loan's status. (Hoy Decl., Doc. 14-8, #238; *see also* Doc. 14-14, #257–58 (providing examples)). River City maintains that it discussed that issue with Foreman in early June before it placed her on the PIP, but to no avail. (*See* Doc. 13, #88; Doc. 14-8, #237). More than the copy-and-paste issue, though, Foreman also supposedly failed to handle several loan files thoroughly and accurately. (Doc. 14-8, #238; *see also* Doc. 14-13, #255). So to help Foreman "improve" on those shortcomings and "assist the company in closing customers' loans without issues and delays," River City initiated the PIP. (Doc. 14-8, #238). Foreman's manager, Brandi Canann, was tasked with monitoring Foreman's weekly progress. (Doc. 13-6, #179). And notably, the PIP said that even if Foreman successfully completed it, any subsequent decrease in performance could "result in dismissal from River City Mortgage without the issuance of another warning or improvement plan." (*Id.*).

Before implementing the PIP (in late June) and just after implementing the PIP (in early July), Canann and a few individuals from management met with Foreman to discuss the plan's parameters. (Doc. 13, #82–83). At the first meeting, Foreman remembers objecting to the 9:00 a.m. reporting requirement given her split schedule (though she doesn't recall exactly how the conversation went). (*Id.* at #80).

And she also requested examples of loans that she had inadequately handled, which Canann didn't provide until their second meeting. (*Id.* at #81–82). Even then, Foreman claims that Canann simply handed over a bullet-point list of four loans Foreman supposedly fell short in managing—there was no "substantive discussion" surrounding her alleged performance deficiencies. (*Id.* at #86–87).

In any event, Foreman successfully completed the PIP in July 2023. (*Id.* at #98–99; Doc. 14-8, #238). River City says Foreman performed satisfactorily for about a month after that, but that by September 2023, she had returned to her old habits. (Doc. 14-8, #238–39). It reports no less than nine instances, between September 2023 and January 2024, of Foreman either copying and pasting large emails into the company's loan repository, or inaccurately completing tasks related to loan closings. (*Id.* at #239–40; *see also* Doc. 14-14, #257–59). As one example, River City provides a screenshot of a Microsoft Teams message chain in which one co-worker requested that another co-worker take over a loan file Foreman had been handling because Foreman "missed [a] condition" in the relevant documentation and hadn't been "focus[ing] on the right details." (Doc. 14-14, #259). River City reached the end of its rope in January 2024 when Foreman supposedly failed to clear various loan conditions for a loan set to close the next day. (Doc. 14-8, #240). Her mistakes apparently delayed the closing for almost a month—what River City calls an "unacceptable" outcome for a Senior Mortgage Loan Processor. (*Id.*).

Foreman tells the story a little differently. She says that when she learned of the PIP in the summer of 2023, she "was completely caught off guard." (Doc. 13, #79).

In her view, she had been "d[oing] [her] job well." (*Id.* at #76). Not only was Foreman topping the list for loan closings among her team, but River City had only recently asked her to join the Purchase Processor Team, a request that indicated she was excelling. (*Id.* at #76–77). Plus, several of her then-colleagues had nominated her for "Spotlight Nominations," describing Foreman as "helpful," "knowledgeable," and "clear with communication." (Foreman Decl., Doc. 20-2, #368–69). And when it comes to the loan that River City now claims ultimately led to her termination, Foreman does not remember failing to include any necessary conditions. (*Id.* at #371).

So it's her belief that River City put her on a PIP and later terminated her because it no longer "want[ed] to accommodate [her] FMLA" leave. (Doc. 13, #116–17). And she points to the PIP's inclusion of the 9:00 a.m. reporting requirement as evidence. (*Id.* at #117). Though Foreman admits that, notwithstanding that "requirement," during and after the PIP, River City always permitted her to take FMLA leave and come into the office after 9:00 a.m. when her IBS required. (*Id.* at #68–69, 89–92, 99–101, 103).

Whatever ultimately led to the decision, all agree that River City terminated Foreman on January 17, 2024. (Doc. 20-1, #363). And that prompted Foreman to file this lawsuit, in which she asserts three counts: FMLA interference (Count I), FMLA retaliation (Count II), and disability discrimination under the ADA (Count III). (Am. Compl., Doc. 8, #27–29).

River City now moves for summary judgment on all three claims. (Doc. 15). In its view, Foreman failed to make a prima facie case on each of them. (*Id.* at #273–82).

And even if she had, River City says it had a legitimate, nondiscriminatory reason to take the action it did, and that Foreman can't prove that its reasons for imposing the PIP or later terminating Foreman were pretextual. (Doc. 22, #386–87, 389–90).

Foreman responded, (Doc. 20), and River City replied, (Doc. 22), which means the motion is ripe for review.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant meets its burden, though, the nonmoving party may not rest on its pleadings, but rather must come forward with significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. Whether summary judgment is appropriate depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

This Court does not have the responsibility to sua sponte search the record for evidence creating a genuine issue of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399,

404–06 (6th Cir. 1992). That burden instead falls upon the nonmoving party to "set forth specific facts" or evidence in dispute. *Anderson*, 477 U.S. at 250 (quotation omitted). If the nonmoving party fails to make the necessary showing for an element upon which it bears the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In sum, in light of all the facts as to which River City shows a lack of dispute, Foreman must in turn present some remaining "sufficient disagreement" which would require submission to a jury. *See Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251). In making that determination, this Court must view the evidence in the light most favorable to the nonmoving party—Foreman. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## LAW AND ANALYSIS

Foreman asserts three claims: FMLA interference, FMLA retaliation, and disability discrimination under the ADA. River City says they all fail as a matter of law. Foreman, unsurprisingly, disagrees. So the Court takes each claim in turn. Ultimately, though, the Court agrees with River City—none of them survive summary judgment.

### A. Foreman's FMLA Interference Claim Fails Because She Failed to Identify Any Prejudice She Suffered From River City's Alleged Interference.

Start with Foreman's FMLA interference claim. By way of background, the FMLA entitles eligible employees to twelve weeks' leave each year for, among other

things, "a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D). And employers may not "interfere with, restrain, or deny the exercise of" that right. *Id.* § 2615(a)(1). Foreman complains that River City did just that when it required her, via the PIP, to report to the office by 9:00 a.m. each day. (Doc. 20, #345).

In analyzing Foreman's claim, the Court employs the *McDonnell Douglas* burden-shifting framework, which proceeds in three steps. *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017). First, Foreman must establish a prima facie case showing, by a preponderance of the evidence,

> that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

*Id.* (quotation omitted). If she does so, then River City "may offer a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* (quotation omitted). This burden is merely one of production, not persuasion. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Then, if River City meets its burden, Foreman must show, once again by a preponderance of the evidence, that the provided reason was pretext. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).

One other thing before turning to case-specific analysis. As the Court has previously explained, the preponderance of the evidence standard is ill-fitted for summary judgment. *Abernathy v. TriHealth G LLC*, No. 1:22-cv-624, 2025 WL 689333, at *10–11 (S.D. Ohio Mar. 4, 2025); *Burress v. Spring Grove Cemetery &*

*Arboretum*, No. 1:18-cv-879, 2020 WL 3036047, at \*8–9 (S.D. Ohio June 5, 2020). It typically involves "weighing competing evidence and undertaking credibility assessments"—activities courts generally do not undertake at summary judgment. *Abernathy*, 2025 WL 689333, at \*10. That said, it seems the preponderance standard is what the Supreme Court and courts down the line have used to frame the *McDonnell Douglas* inquiry. *Id.* at \*10–11. So the Court will dutifully employ it here, but with the understanding that "preponderance of the evidence" merely means the plaintiff must create at least a genuine dispute of material fact as to each element of the required showing at a given stage. *Id.*

With that out of the way, consider the dispute at hand. River City says Foreman stumbles at step one (her prima facie case) because she admitted that River City never denied her the FMLA benefits to which she was entitled. (Doc. 15, #274). It points to her deposition where Foreman conceded that, even while on the PIP, River City never rejected or denied her use of FMLA leave. (*Id.* (citing Doc. 13, #68–69, 89–90, 99–100, 103)). And given that concession, River City argues, Foreman's FMLA interference claim fails. Foreman, however, sees things differently. She argues that whether River City ultimately permitted her to take requested leave or not, the mere inclusion of a 9:00 a.m. reporting requirement in her PIP constitutes FMLA interference because it undermined the free exercise of her FMLA rights, or in other words, chilled her use of protected leave. (Doc. 20, #345). In the end, River City has the better argument.

As a starting point, all agree that River City never flat-out denied Foreman's requests to use FMLA-protected leave. Foreman repeatedly admitted as much in her deposition. (*See, e.g.*, Doc. 13, #101). So the question, then, is whether the 9:00 a.m. reporting requirement itself, even if not enforced, impermissibly "discourag[ed] or chill[ed]" Foreman from exercising her FMLA-protected leave. *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 962 (S.D. Ohio 2005). Foreman has offered remarkably little evidence suggesting any such chilling or that the PIP "actually discouraged [her] from utilizing [her] FMLA entitlements." *Id.* She testified that the reporting requirement was something of a "gray spot" for her—in other words, while she felt that she "needed to" be in-office by 9:00 a.m. each day, she also believed that "because of the law," River City wasn't going to reject her requests to report to the office late on specific days. (Doc. 13, #102). And, as far as the Court can tell, she was right—Foreman exercised her right to protected leave numerous times while on the PIP without "any pushback" from River City. (*Id.* at #90, 103; *see also* Doc. 13-4; Doc. 14-5, #231). That in turn at least suggests that the reporting requirement did not discourage her use of FMLA leave.

In any event, her claim suffers from an even more fundamental flaw: an inability to show that the alleged interference (including a reporting requirement in the PIP) prejudiced her in a way that would impose FMLA liability on River City. The Supreme Court has observed that, even if an employee proves an employer violated the FMLA by interfering with her rights, the FMLA's enforcement provision "provides no relief unless the employee has been prejudiced by the violation."

11

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). That prejudice, moreover, must be of a certain kind. An employee can, for example, recover "any wages, salary, employment benefits, or other compensation denied or lost," or "any actual monetary losses sustained … as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A). Or the Court may grant equitable relief as "appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1)(B). The point is that "[t]he remedy is tailored to the harm suffered." *Ragsdale*, 535 U.S. at 89.

Foreman's problem here is that she cannot show she was prejudiced in a way that warrants relief under the FMLA. She did not lose any wages, salary, or benefits when River City imposed the PIP. To the contrary, she received leave (in the form of delayed reporting) whenever she requested it, even while on the PIP. (Doc. 13, #68–69, 89–92, 99–101, 103). And even if Foreman were to assert that she would have pursued more leave if the PIP did not include the 9:00 a.m. reporting requirement, she still cannot show she lost any wages or other compensation as a result of the alleged interference.

Of course, Foreman also says River City terminated her because she used FMLA leave, which could constitute interference and carry with it the sort of prejudice that would allow the Court order equitable relief, such as requiring River City to reinstate her. But as explained below, Foreman has not identified sufficient evidence to create a genuine dispute that River City imposed the 9:00 a.m. reporting requirement based on her previously-requested FMLA leave, or, more importantly, that it terminated her for the leave she requested while on the PIP. *See infra* Part B.

And without proof that her termination was somehow tied up in her requests for FMLA leave, the Court isn't persuaded that reinstatement is "appropriate" relief (nor in any event does Foreman request it). 29 U.S.C. § 2617(a)(1)(B).

At bottom, Foreman has failed to identify any prejudice she suffered because of the alleged FMLA interference in the form of including a reporting requirement in the PIP. And absent such prejudice, her claim fails as a matter of law.

## B. Foreman's FMLA Retaliation Claim Fails Because She Did Not Establish Pretext.

Turn to Foreman's FMLA retaliation claim. Beyond prohibiting interference, the FMLA makes it "unlawful for any employer to discharge or … discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* § 2615(a)(2). Foreman says River City violated that prohibition when it (1) put her on the PIP in June 2023, and (2) terminated her in January 2024.[3] (Doc. 20, #347–53).

Just like Foreman's FMLA interference claim, the Court analyzes her FMLA retaliation claim under the three-part *McDonnell Douglas* framework. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Here, though, the elements of Foreman's prima facie case differ slightly. She must prove that (1) she was engaged in FMLA-protected activity; (2) River City knew she was exercising her FMLA-

---

[3] River City argues that Foreman's FMLA retaliation claim hinges on only her termination, not the PIP. (Doc. 15, #276). The Court isn't convinced. Foreman's Amended Complaint alleges that River City "placed [Foreman] on a [PIP], which was motivated in part by the fact she could not report to the office by 9:00 a.m. every day." (Doc. 8, #27). And though her FMLA retaliation claim doesn't explicitly reference the PIP, it does incorporate preceding paragraphs by reference. (*Id.* at #28). So while Foreman's Amended Complaint could have perhaps been clearer in some regards, the Court is nonetheless satisfied that she did base her retaliation claim on imposition of the PIP, as well as her termination.

protected rights; (3) River City then "took an employment action adverse to her;" and (4) "there was a causal connection between the protected FMLA activity and the adverse employment action." *Id.* at 761 (quotation omitted).

River City seems to concede that Foreman has met her burden on the first three elements of her prima facie case, but argues she falls short on the fourth element because there is insufficient temporal proximity to establish causation here. (Doc. 15, #276–78). And it adds that, even if Foreman had satisfied her prima facie obligation, she did not prove that River City's legitimate, nondiscriminatory reason to put her on the PIP and later terminate her—poor performance—was pretextual. (*Id.* at #278–79; Doc. 22, #386–87). The Court ultimately agrees with the latter, so it assumes (without deciding) that Foreman has established her prima facie case, and proceeds directly to *McDonnell Douglas*'s remaining two steps.

River City cites Foreman's poor performance as its reason to both place Foreman on a PIP and later terminate her. (Doc. 15, #278–79). That counts as a "nonretaliatory reason" for River City's actions. *Kovacevic v. Am. Int'l Foods*, No. 22-1675, 2023 WL 3756063, at *4 (6th Cir. June 1, 2023) (citing *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 546 (6th Cir. 2008)). So the burden shifts to Foreman to prove, by a preponderance of the evidence (or, as the Court is interpreting that phrase—identify evidence creating a genuine dispute), that the stated reason was "factually untrue," or, said differently, that it was pretext for retaliation. *Id.* at *5 (quotation omitted).

14

Plaintiffs usually show pretext by arguing that their employer's stated reason "lacked a factual basis, did not actually motivate the adverse action, or was insufficient to motivate the adverse action." *Gray v. State Farm Mut. Auto. Ins. Co.*, 145 F.4th 630, 640 (6th Cir. 2025). Foreman doesn't specify under which route she's proceeding. But it ultimately doesn't matter because, as the Sixth Circuit recently noted, its "caselaw does not prescribe any particular method for showing pretext." *Id.* Pretext, at bottom, asks whether the employer's act was "motivated by the proffered reason or retaliation?" *Id.* So that's the question to which the Court turns.

Foreman says three things reveal that it was her use of FMLA rights, not her poor work performance, that motivated River City to take the adverse action it did: (1) the PIP's inclusion of the 9:00 a.m. reporting requirement, (2) the dearth of contemporaneous documentation recording her supposed performance deficiencies, and (3) the timing of the PIP and her termination when measured against her use of FMLA leave. (Doc. 20, #350). But at day's end, Foreman's arguments fall short.

Take them in reverse order, starting with timing. Foreman seems to say that because River City (1) placed her on a PIP within six months of it approving her FMLA leave application, and (2) terminated her the day after she took FMLA-protected leave, that timing implies pretext. (*Id.* at #348–49). Not necessarily. "[T]emporal proximity alone may provide 'evidence of a causal connection for the purposes of satisfying a *prima facie case* of retaliation.'" *Kovacevic*, 2023 WL 3756063, at *5 (quotation omitted). But it "cannot be the sole basis for finding *pretext*." *Id.*

(quotation omitted). And since it's the latter that's at issue here, Foreman must present something more than mere timing to meet her burden.

With that in mind, turn to Foreman's complaint about the lack of contemporaneous documentation concerning her performance deficiencies. Here, Foreman claims River City issued her no disciplinary notices in connection with her performance since January 2021, and instead "promoted"[4] her to the purchase processor team in January 2023, indicating not poor performance but excellent performance. (Doc. 20, #349). And, Foreman protests, if her work product had become poor enough to warrant termination, then one would have expected further discipline, or at the very least, documentation of her failings, but River City memorialized nothing until this litigation arose. (*Id.* at #349–50). In short, then, she says the lack of documentation is suspect and hints at pretext.

The Court disagrees. To start, it matters not whether River City memorialized Foreman's shortcomings after it implemented Foreman's PIP or after it terminated her because "failure to document contemporaneously does not necessarily give rise to an inference of pretext." *Kovacevic*, 2023 WL 3756063, at *6 (citing *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 503 (6th Cir. 2007)). Beyond that, the record before the Court shows that River City had at least *discussed* some of Foreman's performance-related shortcomings with her before it imposed the PIP, whether it formally documented them or not. Indeed, the PIP stated that someone "counseled"

---

[4] River City disagrees that Foreman's placement on the Purchase Processor Team was a "promotion." (Doc. 14-8, #241). In its view, Foreman "started with the company as a Senior Loan Processor and retained that position through the date of her termination," regardless of what team she was serving at any given time. (*Id.*).

Foreman concerning her "unacceptable performance" on June 15, 2023—nearly two weeks before River City notified Foreman about the PIP. (Doc. 13-6, #179; *see also* Doc. 14-8, #237 (suggesting that someone had "counseled [Foreman] about some performance-related issues" before River City initiated the PIP)). And Foreman could not refute that evidence. When asked at her deposition whether she had any discussions with her supervisors about performance issues before the PIP started, Foreman said she "may have," but "d[id]n't recall." (Doc. 13, #80). Plus, the PIP also confirmed, in no uncertain terms, that if Foreman's performance decreased again after she successfully completed the plan, that could "result in [her] dismissal from River City Mortgage *without the issuance of another warning* or improvement plan." (Doc. 13-6, #179 (emphasis added)). Foreman, in other words, was on notice that any post-PIP failures on her part could lead to her termination without additional warning from River City. The alleged lack of contemporaneous documentation as to Foreman's deficiencies thus isn't enough to establish pretext.

That leaves the PIP's 9:00 a.m. reporting requirement, which Foreman claims is smoking-gun evidence of pretext. But the Court isn't convinced. For one, as already explained, Foreman admitted that even after River City implemented the PIP, it permitted her to use her FMLA leave and arrive at the office after 9:00 a.m. anytime she requested. *See supra* Part A. True, that alone doesn't necessarily negate the potential for pretext—River City could have granted her leave with the ultimate goal of terminating her because of that leave. But Foreman's job at this juncture is to raise

at least a genuine dispute as to whether River City retaliated against her for her use of FMLA leave. And the evidence she's presented doesn't do so.

To support its PIP and termination decisions, River City submitted two lists outlining Foreman's performance deficiencies: one summarizing numerous instances in which Foreman did not adequately fulfill her role pre-PIP, (Doc. 14-13, #255), and one summarizing the same post-PIP, (Doc. 14-14, #256–62). One of the lists, for example, includes a screenshot of one former colleague asking another former colleague to take over a loan for Foreman because her handling of it wasn't up to snuff. (*See id.* at #259). In response, all that Foreman offers to rebut that evidence of her poor performance is a former colleague's declaration, stating that Foreman was a "top performer," (Baker Decl., Doc. 20-3, #373), her own assertion that she performed "excellent[ly]," (Doc. 20-2, #368), and a contention that former colleagues awarded her a few "Spotlight Nominations" for her work,[5] (*id.* at #368–69). None of those, whether considered alone or in combination, create a genuine dispute that River City took the action it did pretextually.

When it comes to determining whether an employer found its employee's performance deficient (or, rather, was engaged in impermissible retaliation), it's the employee's supervisors' and managers' opinions that matter, not coworkers' opinions. *Bart-Williams v. Exxon Mobil Corp.*, No. 1:16-cv-1338, 2017 WL 4401463, at *14 (E.D. Va. Sept. 28, 2017). After all, managers—like Canann here—are the individuals

---

[5] River City's view of these "Spotlight Nomination" isn't quite as enthusiastic as Foreman's. It describes the purpose of those awards as an attempt to "boost[] employee morale," not as any kind of job performance award. (Doc. 14-8, #241).

responsible for reviewing and evaluating an employee's work. (*See, e.g.*, Doc. 13-6, #179). And the record evidence shows the River City managers found Foreman's work performance deficient. Foreman's effort to rebut River City's evidence of her poor performance, by citing her own opinion and a couple of coworkers' opinions that she was an excellent worker, is simply not enough. Even viewing Foreman's declaration, her colleague's declaration, and the assertion that still other colleagues nominated her for a few awards in a light favorable to Foreman (as the Court must), all they show is that she and a handful of other employees—not River City management who was responsible for reviewing Foreman's work—believed Foreman was performing adequately. And those opinions tell the Court nothing about what *River City* thought about Foreman's performance, which is the operative question here.

Stated more generally, when an employer points to specific performance issues as the basis for an adverse employment decision, the employee cannot respond by relying on isolated positive feedback from coworkers, or self-serving testimony about the employee's own performance, to create a genuine dispute as to pretext. *See Bart-Williams*, 2017 WL 4401463, at *15. Rather, the employee must "attack the specific reason" River City offered for her termination—that her supervisors found her performance inadequate. *Id.* And here Foreman does nothing of the sort. For example, she did not come forward with evidence suggesting that the cited performance-based shortcomings did not in fact occur (other than her subjective and self-serving belief to the contrary (*see* Doc. 20, #354–55)). Nor did she provide evidence tending to show that, as a general matter, River City does not respond to performance-based

19

deficiencies of the type at issue here by terminating the unsatisfactory employee (which could give rise to an inference that the termination at issue was not in fact motivated by the alleged conduct). She merely relied on her own belief and non-supervisor colleagues' beliefs as proof that her "job performance was generally satisfactory," which doesn't create a genuine dispute when measured up against River City's evidence. *Brown v. Siemens Healthcare Diagnostics, Inc.*, No. CIV.A. 11-0769, 2012 WL 3136457, at \*9 (D. Md. July 31, 2012).

In short, Foreman has not carried her burden of persuading the Court that a genuine dispute remains as to what caused River City to take the actions it did. *See Gray*, 145 F.4th at 640 ("[P]retext is about causation."). Based on all available evidence, River City placed Foreman on the PIP and later terminated her because she was not living up to the company's expectations for a senior loan processor. River City notified Foreman of a performance-based infraction in 2021. (Doc. 13-9, #183). And while Foreman seemingly resolved River City's concern on that front, the record suggests that other performance-related deficiencies surfaced in 2023. (*See* Doc. 14-13, #255; Doc. 14-14, #256–62). All of that indicates River City terminated Foreman because of her work quality, not IBS-related leave. Her conflicting view does not save her claim. *See Kovacevic*, 2023 WL 3756063, at \*6.

## C. Foreman's ADA Claim Fails Because River City Did Not Fail to Accommodate Her and Because She Failed to Establish Pretext.

That leaves Foreman's ADA claim, which she seems to raise as two separate claims. She says River City discriminated against her by both (1) failing to accommodate her IBS, and (2) terminating her on account of her IBS. (*See* Doc. 8,

#28–29). River City begins its attack on these claims by contesting whether Foreman's IBS even counts as a disability under the ADA. (Doc. 15, #280). But the Court concludes that it need not reach that issue because, even assuming that IBS does qualify, and that Foreman has otherwise satisfied her prima facie obligations for both types of ADA claims, the claims still fail as a matter of law.

Begin with the failure-to-accommodate claim. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). One way an employer violates that provision is by failing to reasonably accommodate an otherwise qualified disabled employee's physical or mental limitations. *Id.* § 12112(b)(5)(A).

Foreman says River City breached its obligation to accommodate her IBS when it imposed the 9:00 a.m. reporting requirement in her PIP. (Doc. 20, #353). Foreman's trouble, though, is that she admitted River City *didn't* fail to accommodate her. Rather, as discussed above, each time she asked to come into the office later than 9:00 a.m., River City let her do so, no questions asked. (Doc. 13, #68–69, 89–92, 99–101, 103). The Court cannot make out how that amounts to a failure to accommodate when River City, by Foreman's own admission, allowed Foreman to do the very thing she requested as an accommodation. And just because River City stopped allowing Foreman to come into the office after 9:00 a.m. on days her IBS *wasn't* flaring does not mean it failed to accommodate her disability. Employers have an obligation to

21

provide *a* reasonable accommodation, not necessarily *the* reasonable accommodation an employee requests. *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 459–60 (6th Cir. 2002). And River City provided *a* reasonable accommodation when it permitted Foreman to arrive at the office later whenever she asked. In short, then, Foreman's ADA accommodation claim fails for largely the same reason her FMLA interference claim did. *Supra* Part A.

Now consider the ADA discrimination claim. Apart from requiring employers to accommodate reasonable requests, the ADA further prohibits employers from discriminating against qualified individuals "on the basis of disability in regard to … the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). Foreman claims River City violated that provision when it terminated her because of her IBS. (Doc. 20, #354).

Ultimately, though, the Court need not tarry long here either because this claim fails for much the same reason Foreman's FMLA retaliation claim does. That is, she has not established that River City's reason for either placing her on the PIP or terminating her—poor performance—amounts to mere pretext. *Supra* Part B.

Foreman counters that all she must prove is but-for causation, not that her IBS was the sole reason River City terminated her. (Doc. 20, #356). That's true as a legal matter. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012). But the but-for causation element goes to Foreman's prima facie case (which the Court assumes for now that she's established), not to pretext. *Demyanovich*, 747 F.3d at 433. And in any event, the record suggests that even if Foreman wasn't suffering

from IBS at the time of her termination, things "nevertheless would have transpired the same way." (*See* Doc. 20, #356 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989)). As discussed above, the available record evidence shows that River City based its decisions concerning Foreman on her performance. That, in turn, means she hasn't established a genuine dispute as to whether her disability was a but-for cause of her termination. *Humboldt*, 681 F.3d at 321.

## CONCLUSION

For the reasons explained, the Court **GRANTS** River City's Motion for Summary Judgment (Doc. 15). The Court therefore **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

September 2, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**